**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW HAMPSHIRE**

U.S. DISTRICT COURT
DISTRICT OF NH

2019 NOV 18  AM 11: 52

FILED

THOMAS DESTEPH

Plaintiff

vs.

GUGGENHEIM PARTNERS, LLC
SECURITY BENEFIT LIFE INSURANCE
COMPANY

Defendants

Docket No. _____

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

**NOW COMES Plaintiff, Thomas DeSteph, Pro Se,** bringing this action against the above

captioned defendants: That Security Benefit Life's administration, under surveillance of Guggenheim

Partners, LLC,  has colluded with several of their internal sales  staff, supervisors, managers,

department heads, and regional vice presidents to sway Thomas DeSteph that all rules, regulations, and

mandates were being followed during the underwriting process of his submitted annuity applications.

(The Compliance Fraud Scheme) That these annuity applications were written on the lives of clients

introduced by the Plaintiff under the pretense of information obtained from Security Benefit Life. That

"The Compliance Fraud Scheme" violated both the federal mail, and wire fraud statutes, 18 U.S.C. §§

1341 and 1343, in that the scheme was intended to fraudulently obtain money from persons through the

use of USPS, and interstate wire communications (the latter through the SBL national website)

telephone, and email communications from the Kansas City office; and, breached commission contracts, violated New Hampshire unfair insurance trade practices, (NH - RSA 417:4), used fraud, and fraudulent misrepresentation in their underwriting process, unlawfully withheld commissions owed to the Plaintiff, unlawfully reduced commissions bound by written contract owed to the Plaintiff, and delayed commissions against written contractual agreements. That Security Benefit Life violated Antitrust Laws, participated in, and promulgated, untruths resulting in the defamation of the Plaintiff, and profited in unjust enrichment. Security Benefit Life, and Guggenheim Partners, LLC violated due diligence procedure, while profiting from the financial exploitation of a New Hampshire Elder, and US Army Veteran.

## PARTIES AND RELATED ENTITIES

### A. PLAINTIFF

1.     Plaintiff Thomas DeSteph ("DeSteph") is, and at all times mentioned herein, was a resident and citizen of the State of New Hampshire. DeSteph has been d/b/a The DeSteph Agency since 1979; first in the State of Connecticut, then in 1986, in the State of New Hampshire. DeSteph has enrolled teachers, administrators, and their support staff into Tax Sheltered Annuities (TSA) or IRS Code 403(b) programs since 1979, and has worked closely with school administrations, ERISA Regulations, and Insurance Companies ever since. DeSteph, at one point in the last thirty-five years, has had as many or more than twenty agents contracted under his general agency, and, as many insurance company broker/agent contracts providing annuities for his clients. For the purpose of this complaint, it is important to note that many of the prior mentioned insurance companies continue to pay residuals to this day on annuities still on the book of business written by DeSteph; funds typically are paid to both, The DeSteph Agency, and DeSteph as an individual. DeSteph is also a "Vietnam Era" veteran, and today is a volunteer aiding disabled veterans of New Hampshire.

## B. DEFENDANTS

2.      Defendant Guggenheim Partners, LLC ("Guggenheim") is a New York limited liability corporation, with its headquarters in Chicago, Illinois and New York, New York.

3.      Defendant Security Benefit Life Insurance Company ("SBL") is a Kansas Company domiciled in Kansas. Security Benefit Life Insurance Company sells its annuity products in New Hampshire, Massachusetts, Connecticut, and elsewhere throughout the country through contracted agents. DeSteph was contracted and appointed as an insurance broker/agent with Security benefit Life Insurance Company since 1979.

## C. RELATED ENTITIES

4.      Plaintiff is informed, and believes, and thereon alleges that Mark Walter ("Walter") was at all relevant time Guggenheim's CEO. It is believed Walter is currently Chairman, and controlling owner of the Dodgers after purchasing the club for 2.15 billion dollars, and is partnered with ("Magic") Johnson and others. Walter is also a trustee or director of several organizations including the parent holding company for Security Benefit Life Insurance Company.

5.      Plaintiff is informed, and believes, and thereon alleges that Michael P. Kiley, was at all relevant time the Chief Executive Officer of Security Benefit Life Insurance Company.

6.      Plaintiff is informed, and believes, and thereon alleges that Philip Hahn, was at all times relevant Regional Vice President of Security Benefit Life responsible for annuity sales in New England; including New Hampshire, Massachusetts, and Connecticut.

7.      Plaintiff is informed, and believes, and thereon alleges that Cathy Berry, was at all times relevant an Internal Sales Consultant with Security Benefit Life responsible for sales in New England; including New Hampshire, Massachusetts, and Connecticut.

8.      Plaintiff is informed, and believes, and thereon alleges that Marva McKinley, was

at all times relevant a Business Development Coordinator with Security Benefit Life.

     **9.**    Plaintiff is informed, and believes, and thereon alleges that Nick Dobelbower, was at all times relevant an Internal Sales Consultant with Security Benefit Life responsible for sales in New England; including New Hampshire, Massachusetts, and Connecticut.

     **10.**    Plaintiff is informed, and believes, and thereon alleges that Kleber M. Alves, was at all times relevant an Internal Sales Consultant with Security Benefit Life responsible for sales in New England; including New Hampshire, Massachusetts, and Connecticut.

     **11.**    Plaintiff does not know the true names of Defendants DOES 1 through 100, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and thereon alleges that each of these Doe defendants were in some manner responsible for the events and happenings alleged in this Complaint, and for Plaintiff's damages.

     **12.**    Plaintiff is informed, and believes, and thereon alleges that at all times herein mentioned, each of the defendants herein were the agents and/or co-conspirators with each of the remaining defendants, and in acting or omitting to act as alleged were acting or omitting to act within the scope of such agency and/or conspiracy with the knowledge, permission, consent, and/or approval of all defendants, and each of them.

## D.  JURISDICTION AND VENUE

     **12.**    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1332 because (a) defendants reside in several states (New York, Massachusetts, Illinois, Kansas), and Plaintiff is a citizen of New Hampshire, and (b) the amount of controversy exceeds $75,000.

     **13.**    This Court has personal jurisdiction in this action as the Plaintiff, Thomas DeSteph resides in Cheshire County, New Hampshire, was appointed as an agent of SBL in New Hampshire, Massachusetts, Connecticut, Florida, and other states. And, did business in this state

enrolling educators in Tax Sheltered Annuities, IRC 403(b), using annuities provided by SBL. Guggenheim acquired SBL in 2010, and marketed SBL annuities in New Hampshire since the acquisition. SBL is registered as an insurer in the state of New Hampshire. Philip Hahn, Cathy Berry, Marva McKinley, Nick Dobeldower, Kleber M. Alves, and Does 1 - 100 all assisted SBL in the sale of annuities in the State of New Hampshire, and other geographic areas in New England, and beyond. Philip Hahn is Regional Vice President of SBL, works and resides in Leominster, Massachusetts; and, was the direct contact of Thomas DeSteph during the relevant times herein. Hahn is registered, and has business dealings with SBL in the State of New Hampshire.

14.   Venue lies in this court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in New Hampshire.

### E.  STATEMENT OF THE FACTS

15.   Guggenheim Partners, LLC, acquired Security Benefit Life Insurance Company in 2010 after SBL began bleeding money from difficulties of the economic turndown of 2008, and the collapse of the stock market. During the next two years, DeSteph noticed many changes that hurt the marketable concepts used while selling annuity products offered by SBL; and, on February 11, 2014, Guggenheim Partners, LLC, and their related insurance companies, including SBL, were accused of Racketeering, Fraud, and other violations of law. (Cooking the Books) The accusations where outlined in a class action brought by two policyholders from Illinois.

16.   In part, the class action said: "*When Guggenheim, a private equity firm, swooped in to exploit the insurance company model, acquiring insurance companies, raiding their cash, and leaving the long-term obligations of the policyholders unprotected. In the mere two years after taking control of Security Benefit Life, EquiTrust Life, and Guggenheim Life, Guggenheim ignored the fundamentals of operating an insurance company for the longterm security of the*

*policyholders and annuity holders by extracting hundreds-of-millions of dollars from these*

*companies, not only depleting their surplus but eroding their reserves, leaving them in a negative*

*surplus condition – meaning assets are less than required reserves.* (**See Whitmore v. Guggenheim**

**Partners LLC, 14-cv-00948**)

17.    The changes, and following push to infuse SBL with annuity premium were

evident in communications with internal sales consultants, and Vice President Hahn. On several

occasions, DeSteph felt Hahn, and others were becoming overly lenient with rules, regulations,

and underwriting requirements. However, losing a productive General Agent like DeSteph would

damage production, and SBL used every means of deception, fraudulent misstatements,

fraudulent concealment,  underwriting oddities, ignored underwriting due diligence, and

participated in collusion to hide facts of noncompliance to fuel the incoming funds associated

with annuity premium - hence The Compliance Fraud Scheme. Then, SBL breached contractual

agreements in an effort to increase profits by lowering commissions on the most productive

products. When they could no longer conceal their ongoing deception, SBL, through their internal

sales consultants, mangers, and vice presidents - violated antitrust law, breach of contract law,

and unjust enrichment, to cheat DeSteph of his thirty-five year book of business, and the residuals

that belong to him.

18.    Today, SBL is holding current commissions paid on reinvestment options of

existing policies owed to DeSteph, in violation of agency/agent commission agreement dated,

September 1, 2017, in their effort to offset commissions paid in 2010, 2011, 2012, and others.

These past commissions were paid on the legal transactions of policy production while DeSteph

was licensed in Connecticut, Massachusetts, and other states. The withholding of these

commissions has caused great damage, pain, and sacrifice on DeSteph and his family. Many of

the commissions now being withheld are offset on commissions paid long before a reasonable

time limitations has expired. SBL has not the contractual right to look back seven or eight years to offset commissions. The contract between DeSteph, and SBL, signed September 2010, only allow chargeback on commissions for thirteen months, and only for the withdrawal of initial premiums by the policyholder paid on the contract/policy at commencement.

## F.  THE FACTS

**19.**   Thomas DeSteph, Plaintiff, first contracted with SBL to market annuity and life insurance products in May 1979. DeSteph was licensed to market these products in Connecticut, Massachusetts, Vermont, New Hampshire, and Florida. In 1993, DeSteph became a General Agent with SBL, signing an agreement to introduce other annuity products offered by the company. However, in early 2000, SBL became stagnate in their effort to compete with other issuers of annuities, and as a result, DeSteph and other agents, reduced the business being sent to SBL. DeSteph did maintain the book of business held at SBL. And in 2010, after Guggenheim acquired SBL, more emphasis was placed on agent support, and once again DeSteph pressed to offer SBL products as an alternative to other annuities being offered to clients. DeSteph initiated field underwritten annuities to SBL again taken from a book of business, which had clients that were approaching end-of-contract annuity provisions with other carriers, and looking for alternative programs to place their funds.

**20.**   On September 10, 2010, SBL changed the Agent/Agency contract reducing the Choice Annuity's commissions. "Choice Annuity" was SBL flagship fixed annuity product; and, a primary tool DeSteph used while setting up retirement arrangements for clients looking to diversify between traditional joint and survivor plans. The Choice annuity, coupled with a fixed-premium life insurance policy were hallmark combinations to cover spouses in the event of a retired primary breadwinner's death. This annuity commission base was the primary residual income for DeSteph between 2010 and May 2018. Additional premium from policyholders

received by SBL on prior issued policies, which is before the new commission schedule of 2010, according to contractual covenants, should have been paid at the old contract rate; however, when SBL received additional premium, they paid commissions as if it were a new contract/policy. This was an obvious **breach of contract**. The additional funds received on older policies were being added to these contracts under the same contract/policy number, and no changes were made to the contract; i.e. no additional insured, no change in any provision in the contract only an extended date of surrender charge for that portion of funding, and was under a commission schedule payable at issue.

      **21.**   DeSteph semiretired in 2012, and surrendered his NH insurance license on February 28, 2012. DeSteph notified non-residence states where he had licenses. Massachusetts and Connecticut did not take any actions, and DeSteph ceased to prospect for new clients but continued to service his book of business. A conversation with internal sales consultant, Cathy Berry, revealed that SBL had no issue with their appointment of The DeSteph Agency or DeSteph servicing clients in both Massachusetts and Connecticut.

      **22.**   This approach was an obvious concealment to allow continuing profits generated by annuity sales, and to keep selling these products and generate more cash being depleted by their  now owner, Guggenheim. Defendant's concealed the truth about state appointments as not disrupt the flow of cash.

      **23.**   SBL often sent DeSteph emails, telecommunications, and other relays to notify him a client needed a beneficiary change, address change, and on occasion, papers signed or forms completed. SBL continued to notify DeSteph of new products, new regulations, and each year asked DeSteph to perform online educational requirements for his appointment. Each time, SBL needed to verify the appointment status of each state, and each time, SBL insisted DeSteph was appointed. On December 7, 2017, Manager Gigi Harlow emailed DeSteph requesting he

assist with a few SBL policyholder issues which he performed.[1] This duty is considered part of the commission paid at the initial submission of business in 2012 on these policies, which is now being withheld; which breaches the contract between SBL, and DeSteph - it allows SBL to be unfairly enriched by the services rendered by DeSteph without compensation.

**24.**    Nicole Nantz, an inside sales consultant at SBL, sent DeSteph Connecticut forms necessary to move a clients funds from one carrier (Insurance Company) to SBL. Before these forms were sent, the SBL representative must confirm whether or not the agent is appointed with SBL in that state. Once again, SBL continued to reassure DeSteph he was appointed in Connecticut. And on May 16, 2017, once DeSteph traveled to have the forms completed and signed by the client, SBL call center sent an email saying he was not appointed in Connecticut. DeSteph called the licensing department to inquire whether he was actually appointed in Connecticut. The licensing department at SBL said, "Of course you're licensed in Connecticut." DeSteph then sent an email to Kleber Alves, his inside sales contact asking if he could confirm if the appointment was indeed intact. On reply, Alves said, "Let me work on this" - and with that, the business was instantly approved. Once again, SBL fraudulently  concealed information related to due diligence requirements to comply with licensing regulations. (*See NH RSA 400-B*)

**25.**    DeSteph continued to earn his commissions by servicing policies issued by SBL paid on prior contracts. Kleber Alves continued to send new product information, and the licensing department continued to ask DeSteph to complete online educational tutorials on related annuities, and products new to SBL. And, on May 16, 2018, DeSteph submitted a field underwritten application for a Choice Annuity on an existing client which was refused by SBL

---

[1] It is important to note that commissions paid on an annuity sale, either as a single upfront payment or spread over the years as a renewal, are compensation for not just the initial sale, but servicing of the client's needs over the years or life of the contract. DeSteph serviced the contracts in question for many years.

new business department claiming DeSteph was no longer appointed in Massachusetts with SBL, and the license was lapsed in 2014.

26.     However, just two weeks prior to this sudden epiphany by SBL, DeSteph wrote two applications for the Choice Annuity worth over $120,000 in premium, the new business department verified DeSteph was appointed in Massachusetts, and expeditiously issued the two policies. Funds were being transferred as IRA (Individual Retirement Annuities) rollovers pursuant to U.S. Code Title 26 Subtitle A Chapter 1 Subchapter D Part I Subpart A § 408. After the two Massachusetts policies were delivered to both clients, funds began arriving at SBL to be entered as premium, and commissions are paid. It was at this time that SBL claimed DeSteph was not appointed in Massachusetts while underwriting the above mentioned Choice Annuity. SBL should have rejected that application on the basis of non-compliance of Massachusetts law, however, SBL underwrote the application, and dismissed DeSteph as the writing agent. This resulted in unjust enrichment for SBL by not paying out the commissions.

27.     Furthermore, SBL sent letters out to anyone with a policy written by DeSteph from 2012 asking them to pick a different representative to service their policy. DeSteph negotiated many calls from Clients indicating they did not want to change representatives but wanted him to continue servicing their individual polices and contracts. They further indicated they wanted to "Dump" SBL, and found their actions egregious.

28.     SBL didn't stop there, they retracted all commissions paid from 2012 resulting in a deficit on DeSteph's account in the thousands of dollars, and withheld current commissions, (DeSteph's only retirement) to recoup commissions paid years ago. This violated signed agreements from 2010, and letters of change dated September 1, 2017.

## H. DISCUSSION

**29.** When SBL underwrote annuity policies, they needed to follow Due Diligence procedures as do all insurance companies. All policies, whether life insurance, health policies, liability insurance or annuities need to conform to each states regulations and rules. Policyholders must qualify, and in the case of annuities, suitability rules must adhere to the regulations governing these contracts by law. This protocol affords little room to ignore or skip whether or not an agent is licensed to sell the product and the underwriter/compliance officer are responsible to conform to those rules before issuing the contract.

**30.** In 2012, DeSteph wrote letters to the Connecticut, and Massachusetts state insurance offices concerning an incident involving an ex-fiancé. Although this was not related to any insurance matter, the loss of personal property was as risk, including his insurance license in New Hampshire - neither state insurance office replied to the change in his NH license. DeSteph then contacted his internal sales representatives at SBL for guidance, Cathy Berry. Berry consulted with managers and returned with an affirmative acknowledgment to continue writing incoming funded annuities. SBL made the corrupt decision to put profits before compliance, and fraudulently concealed the status of DeSteph's appointment; a material fact.

**31.** According to now revealed records, DeSteph had licenses to sell annuities in Massachusetts, and Connecticut through 2014, but SBL had not notified DeSteph until May 2018, that those appointments expired. The licensing, and compliance departments both receive, and have access to up-to-date appointment records in each state they are registered. Additionally, states send insurance companies quarterly appointment updates. SBL received no less than sixteen (16) reports from both Massachusetts and Connecticut between the beginning of 2014 and May 2018 outlining updated appointment records. Furthermore, during underwriting procedures, SBL had access to each state online record of appointments for that month, and underwriting rules of

due diligence demand verification of agent's license.

32.   Deliberate indifference is the conscious or reckless disregard of the consequences of one's acts or omissions. SBL ignored this obvious rule of underwriting to cause the continuance of annuity premium dollars flowing into their general fund. SBL continued to request annuity applications from DeSteph along with assigning service duties for existing clients. SBL misrepresented their knowledge of inactive licenses, and concealed the lack of due diligence since 2014.

33.   If a clerk/Data processor alerted an inside sales consultant of an issue with licensing, the problem immediately disappeared, and the policy was issued. In 2018 when a new compliance representative began overseeing production, and notified DeSteph of the license issue, SBL claimed they knew nothing about the matter - this, before deciding to withhold all current commissions, sending DeSteph into a financial calamity[2]. This violated signed agreements in 2010, and reinvestment change letter dated, September 1, 2017.

34.   **SBL Had No Authority To Look Back**. - SBL is withholding current commissions against commissions distributed to DeSteph in 2012 through 2018 claiming they were paid improperly. DeSteph was properly licensed in 2012 through 2014, and if not properly licensed after 2014, SBL knew, and concealed the noncompliance. SBL had no authority to withhold commissions against business dated over six years prior, in fact, SBL had no authority to withhold commissions against any paid commissions contractually unless the commissions were a chargeback against premium being withdrawn from policies within thirteen months of issue.

35.   Looking back over three years in the State of New Hampshire is a violation of the statute of limitations. In addition, since SBL knew about the license issues, the clock could not

---

[2] Thomas DeSteph is a single father of two daughters, and is retired; the fixed income he has relied included the residuals from SBL.

toll. Even if SBL denies knowing about the license issue, which they cannot do in light of the evidence, they should have known if they performed due diligence during their underwriting process. SBL used bad faith means to conceal material facts, they can't now claim any of the withheld commissions.

36.    SBL had violated agent contractual covenants in the past, as when they reduced commissions in 2010 on future sales, but instead, paid the reduced commissions on past continuous premium being purchased on existing policies - which is not custom in the industry nor was it lawful, and it breached the agent contract. In 2018, SBL delayed commissions on reinvestments for thirty days, paying on the thirty first day after the date of earned commissions - all against the contract issued to DeSteph. On "Choice Annuity" sales, generally, the contract is slated for seven (7) years. The client can withdraw 10% of the contract value once a year avoiding withdrawal charges. If any portion of the premium is withdrawn within thirteen (13) months, the agent suffers a chargeback of commissions directly related to the amount being withdrawn. The end of the surrender charge period (7 Years), the policy reinvests into several options, one of which, the client can surrender the policy without any charges or commission chargeback against the agent. If the client chooses, they can do nothing, and the policy reinvests (Rolls over) into the identical contract. This is a commissionable event, and SBL has reduced this commission on these transactions in opposition to commission schedules issued to agents. Most of DeSteph's book of business fall under this scenario; and, these contracts just begun to reinvest when SBL had a sudden epiphany concerning his licenses. SBL is now holding current reinvestment commissions against commissions paid many years prior, a clear violation of the terms constructed in the meaning of the contract, and schedule of commissions, in violation of the statute of limitations, the doctrine of laches, and against the standard in the industry.

37.    On May 18, 2018, SBL sent letters to many of the plaintiff's clients asking them to

drop the plaintiff as their representative. SBL asked clients to contact them to pick other independent agents that have connections with them. This is in clear violation of antitrust laws, additionally, SBL told untruths, committed fraud, made negligent misrepresentations, and defamation against the plaintiff.

## G. COUNTS

### COUNT I - MISREPRESENTATION AND COMMON LAW FRAUD RELATING TO PLAINTIFF'S LICENSING

**37.** The allegations contained in paragraphs 1 – 36 above, are repeated as if fully rewritten herein. Defendants fraudulently misrepresented the status of DeSteph's license to control the loss of submitted annuity premium by DeSteph, satisfying their need to replenish funds being taken after the acquisition of Guggenheim. Concealing whether or not DeSteph's appointment was current in years 2014 - 2018 was deliberate and fraudulent, and served only as self-dealing greed.

**38.** Defendants had intentionally suppressed, and concealed certain material facts which they had a duty to disclose to the Plaintiff, DeSteph. Concealing the fact that SBL knew the appointment for DeSteph in certain states where applications for annuities were being written was fraud, and knowingly misrepresenting their duty to due diligence to conceal an appointment of license is in direct violation of New Hampshire Insurance Law, RSA 417:4.

**39.** The aforementioned conduct of the defendants constitutes fraud, suppression and concealment of material facts known to them, with the intent, on the part of defendants, of inducing reliance, and thereby depriving Plaintiff of property and/or legal rights of otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship and conscious disregard of the Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

## COUNT II - COMMON LAW FRAUD

**40.**   The allegations contained in paragraphs 1 – 39 above, are repeated as if fully rewritten herein. In order to recover on a theory of fraud a plaintiff must demonstrate: 1) a material representation of a past or existing fact which 2) was false, 3) was made with knowledge or reckless ignorance of its falsity, 4) was made with the intent to deceive, 5) was rightfully relied upon by the complaining party, and 6) proximately caused injury to the complaining party.

**41.**   Defendants' purposefully, and intentionally made, and omitted misrepresentations to the Plaintiff to induce him to continue submitting annuity premiums. When DeSteph submitted annuity applications taken from his client base, SBL intentionally ignored due diligence in underwriting procedure, knew they were violating state insurance law, and Federal Mail Fraud Statues when they mailed the competed contract to DeSteph to deliver  in another state.

**42.**   SBL knew what they were doing when they conspired to omit, and hide the fact they did not renew DeSteph's licenses, and appointments in Massachusetts, and Connecticut. The premeditated scheme was an attempt to not disrupt the flow of premiums being submitted for annuity sales.

**43.**   Defendants' made material misrepresentations by omission, while they were under a duty to make truthful, affirmation disclosures concerning the disposition of the commissions owed to the Plaintiff. DeSteph entrusted defendants with his compensation needed to live. Accordingly, defendants were under an obligation to disclose truthful, accurate information about his license, and its status. Instead, as described above, defendants made misrepresentations and omissions.

**44.**   DeSteph reasonably relied on defendant's intentional misrepresentations when he submitted commissionable premiums for his clients. Plaintiff was harmed by his reasonable and detrimental reliance on defendant's false, and misleading conformation of the status of his license

to submit annuity premiums.

    **45.**  Therefore, plaintiff is entitled to enhanced compensatory damages on his New Hampshire State common law claims.

**COUNT III - NEGLIGENT MISREPRESENTATION**

    **46.**  The allegations contained in paragraphs 1 – 45 above, are repeated as if fully rewritten herein. Without waiving the claim of common law fraud, set forth above, plaintiff alleges that the defendants' misrepresentations, and omissions were, at the very least, negligent. Those misrepresentations, and omissions are set forth above. The defendants' conduct, as described above, was wanton, malicious, and oppressive.

**COUNT IV - BREACH OF CONTRACT**
New Hampshire Common Law

    **47.**  The allegations contained in paragraphs 1 – 46 above, are repeated as if fully rewritten herein. Commissions paid at the onset of life, and annuity contracts not only pay the broker of the sale, but that compensation pays future service of the policy. The plaintiff has performed all services needed to preserve the business written on SBL paper including, servicing provisions of the policy, updating contact information, beneficiaries changes, increases of premium requests, annuitizing payout procedures, and death claims. These assumed duties are part of the compensation paid in the initial commission payment of the policy. When SBL withheld current commissions against commissions paid years ago, on May 23, 2018, through at least the date of this complaint, they dismissed these sales, and servicing of all those policies as if DeSteph never performed the duties.

    **48.**  SBL actions are inconsistent with reasonable, and justified expectations of the agreement the parties, and otherwise inconsistent with the standards of reasonableness.

    **49.**  Additionally, SBL changed the percentage of commissions on future premiums on

standing policies, which is a violation of the agreement held between the parties. Although it is contractually acceptable to change the commission percentage on premium paid a on future policies in writing, it is a violation to change those commissions on current, "in force" policies which SBL did. SBL had characteristically changed the meaning of a term used in the industry known as "New Money" - When a policyholder purchases additional benefit in an annuity, the industry treats the premium as additional premium on an existing annuity, and pays a commission on those premiums at the same rate as at issue. SBL breached the agreement on existing annuities by treating additional premium as a new contract claiming the premium started a new withdrawal period; however, one contract can have multiple penalty periods within the same contract but it is still the same contract, and therefore should have been commissioned under the contract's agreed commission table.

**COUNT V - VIOLATION OF NEW HAMPSHIRE**
**TITLE XXXI - TRADE AND COMMERCE**
**UNFAIR, DECEPTIVE OR UNREASONABLE COLLECTION PRACTICES**

**50.** The allegations contained in paragraphs 1 – 49 above, are repeated as if fully rewritten herein. NH - Rev Stat §358-C:1 and C:2 prohibits unreasonable collection of the paid commissions on business submitted, issued, and paid. SBL is holding paid commissions in a perpetual status, and is illegal. Actions against commissions paid over six (6) years ago is unreasonable, and violates New Hampshire's laws. Security Benefit cannot look back over six years to satisfy their perception of moneys paid at anytime is somehow returnable in some future date in time. Time limitation regulations are enforceable in all actions, and SBL cannot ignore this regulation at their whim.

**51.** This egregious action by Security Benefit caused irreparable harm, and suffering to the plaintiff's financial, economical, and emotional state. Damages to DeSteph and his family was

realized within days of this merciless act by Security Benefit Life as the plaintiff's accounts payable were immediately jeopardized; personal income was halted, and the health and welfare of the plaintiff's children were put at risk.

## COUNT VI - NEGLIGENT, INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS

**52.** The allegations contained in paragraphs 1 – 51 above, are repeated as if fully rewritten herein. The Defendants, and each of them, knew or reasonably should have know, that failing to use due diligence, failing to be truthful about the status of the plaintiff's license would cause plaintiff sever emotional distress. The defendants' failure to exercise due care in dealing with the parties contract, and the dishonest taking of the plaintiff's commissions paid many years ago was negligent, malicious, and performed with malice.

**53.** Without consulting or notifying plaintiff, SBL sent derogatory, inflammatory, and untruths to plaintiff's clients causing defamation, and intentional sever emotional distress on the plaintiff, his family, and his clients.

**54.** As a proximate result of defendant's intentional conspiracy to omit material fact as to plaintiff's license, breaching the party's contractual agreement as it relates to commissions, and sending derogatory letters to plaintiff's clients, and the consequences proximately caused by it, as herein alleged above, plaintiff suffered emotional distress, and mental suffering, all to plaintiff's damage in the sum of $250,000.

## COUNT VII - UNJUST ENRICHMENT

**55.** The allegations contained in paragraphs 1 – 54 above, are repeated as if fully rewritten herein. Unjust Enrichment is an equitable remedy that is available when an individual

receives a benefit, which would be unconscionable for him to retain. <u>Turner v. Shared Towers</u> <u>VA, LLC,</u> 167 N.H. 196, 202 (2014).

**56.** Unlawfully taking back commissions from years ago by withholding current commissions, SBL has wrongfully received a benefit that would be unconscionable for them to retain. Retention of the current commissions against commissions paid years ago is a monetary benefit to SBL that is owed to the plaintiff.

**57.** In March 2018, SBL sent a letter to all DeSteph clients offering to close their respective contracts for a cash value, which does not damage the economic benefit to SBL. Each of these clients sent the letter to DeSteph announcing first, their discuss with SBL, and second, asking DeSteph for advice of the value, and validity of their policies. As a result, not one policyholder surrendered their policies; and therefore, SBL had no lapse policies. This epiphany demonstrates SBL loss was zero, and commissions owed to the plaintiff were realized as unjust enrichment.

COUNT VIII - VIOLATION OF FEDERAL MAIL

AND WIRE FRAUD STATUTES  18 U.S.C. §§ 1341 and 1343

**58.** The allegations contained in paragraphs 1 – 57 above, are repeated as if fully rewritten herein. SBL violated Federal Wire Fraud, and Federal Mail Fraud Statutes on over thirty occasions as they misrepresented the license, and appointment status each time they called, emailed, or used USPS to inform DeSteph he was cleared to submit applications to obtain funds from the public. SBL knew DeSteph was not licensed after 2014 but continued to encourage his production from Massachusetts and Connecticut from office in Topeka, and Massachusetts. SBL sent underwritten contracts to DeSteph at his address in New Hampshire to deliver in both Massachusetts, and Connecticut. SBL called DeSteph requesting he service certain policies in both Massachusetts, and Connecticut. All of these acts were in violation of 18 U.S.C. §§ 1341 and

1343. SBL knew DeSteph was not licensed in Massachusetts, and Connecticut after 2014, however, they fraudulently misrepresented that DeSteph was in-fact appointed with SBL to solicit insurance premiums for annuity purchases in both states to satisfy their need for funds.

WHEREFORE, the Plaintiff requests this Honorable Court:

    A.  Award compensatory damages in favor of Plaintiff against all defendants for the damages sustained for the wrongful conduct alleged, and as will be established through discovery, and at trial, together with interest thereon.

    B.  Awarding punitive damages to plaintiff against all the defendants for the egregiously wrongful conduct alleged herein.

    C. Grant declaratory and injunctive relief as appropriate.

    D. Grant restitution to plaintiff.

    E. Find the defendants caused emotional duress by acting unreasonable, outrageous, and extreme in their actions.

    F. Find the defendants breached parties contract.

    G. Order other such relief that may be just and equitable.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Dated: November 13, 2019

By: _____
Thomas DeSteph, Pro Se, Plaintiff